UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kevin Kelly, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Beliv LLC,<br><br>Defendant | 1:21-cv-08134-LJL<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Beliv LLC ("defendant") manufactures, labels, markets, and sells various flavors of nectar represented as having "No Preservatives" under the Nectar Petit brand ("Product").

 

**I.     CONSUMERS VALUE FOODS WITHOUT ADDITIVES**

2.     Market research firm Mintel has shown that 84 percent of Americans buy foods with "free from" claims, because they are seeking foods that are more natural and less processed.

3.     Over forty percent of consumers believe foods with "free from" claims are healthier and safer than foods without such a claim.

4.     Representing a product has not having preservatives is valued by over seventy percent of consumers.

5.     According to a 2015 Nielsen survey, almost ninety percent of Americans are willing to pay more for healthier foods, understood as being made without additives.

**II.    "NO PRESERVATIVES" IS MISLEADING BECAUSE PRODUCT CONTAINS PRESERVATIVES**

6.     The representation that the Product contains "No Preservatives" is false, deceptive, and misleading, because the ingredient list identifies citric acid and ascorbic acid.

**Ingredients:** Water, Mango Pulp Concentrate, Sugar, ==Citric Acid (as Acidulant)==, Cellulose Gum (as Stabilizer), ==Vitamin C (as Ascorbic Acid)== and Mango Flavor.

7.     Federal regulations, adopted entirely by New York, require the common or usual name of each ingredient used to be listed on the label. 21 U.S.C. § 343(i).

8.     21 U.S.C. § 343(k) requires that any food containing a chemical preservative disclose this fact.

9.     This means that a preservative must be designated in the ingredient list by its common or usual name and a separate determination of that ingredient as a preservative, i.e., "BHA (a preservative)." 21 C.F.R. § 101.22(j).

10.    A chemical preservative is "any chemical that, when added to food, tends to prevent or retard deterioration." 21 C.F.R. § 101.22(a)(5).

11. In the FDA's Overview of Food Ingredients, Additives, and Colors, "Ascorbic acid, [and] citric acid" are identified as the "Names Found on Product Labels" consumers should look for to determine if a food contains preservatives.

12. Ascorbic acid is a chemically modified form of vitamin C, used in foods as a preservative. 21 C.F.R. § 182.3013; 7 C.F.R. § 205.605(b).

13. In 2010, the FDA warned a company selling pineapple and coconut products which failed to truthfully identify :

> The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative[s] ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22.

14. The Product's labeling is misleading because the statement of "No Preservatives" is false, based on the presence of ascorbic acid and citric acid.

15. The Product's ingredient list is misleading because it designates the functions of citric acid not as a preservative, but as an acidulant.

16. An acidulant is a chemical compound that confers a tart, sour, or acidic flavor to foods.

17. While citric acid *may* function as an acidulant, it is misleading for a company to self-designate the function of the ingredients used.

18. The ingredient list further misleads consumers by listing "Vitamin C (as Ascorbic Acid)."

19. Ascorbic acid is the ingredient added to the Product, but by listing it within parentheses, consumers will pay it less attention than the more familiar "Vitamin C."

20. While ascorbic acid and vitamin C are authorized synonyms, this is only in the

3

context for listing nutrient information, not in the ingredient list. 21 C.F.R. § 101.9(c)(8)(v).

21. Consumers who view the ingredient list will not be told that citric acid and ascorbic acid are preservatives.

22. Defendant's subjective description of these ingredients as an acidulant and "Vitamin C" is misleading, and contrary to what is required by law.

23. The only types of ingredients which are permitted to have separate descriptions of their functions include preservatives, leavening agents, dough conditioners, and yeast nutrients.

24. No authority exists for a company to re-classify well-known preservatives as a flavor enhancer and vitamin C.

25. This prevents consumers from learning the truth from the ingredient list, that the "No Preservatives" claim is false, deceptive, and misleading, even though they are not required to scrutinize the ingredient list to confirm or debunk the front label promise of "No Preservatives."

### III. CONCLUSION

26. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

27. By labeling the Product in the manner described here, Defendant gained an advantage against other companies, and against consumers seeking to purchase products without preservatives.

28. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

29. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

30.     Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

31.     The Product is sold for a price premium compared to other similar products, no less than approximately $1.59 per 11.2 oz, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

32.     Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

33.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

34.     Plaintiff Kevin Kelly is a citizen of New York.

35.     Defendant Beliv LLC is a Puerto Rico limited liability company with a principal place of business in San Juan, Puerto Rico.

36.     Beliv LLC is a wholly owned subsidiary of Beliv Global LLC, a Puerto Rico limited liability company with a principal place of business in San Juan, Puerto Rico.

37.     Ninety-five (95) percent of Beliv Global LLC is owned by The Central America Bottling Corporation ("CBC"), a British Virgin Islands limited liability corporation, with a principal place of business in Guatemala City, Guatemala.

38.     CBC is a member of Defendant and a citizen of a foreign state, Guatemala and the British Virgin Islands.

39.

40.

41.     Plaintiff and at least one of defendant's members have citizenship diverse from each

other, because Plaintiff is a citizen of New York and CBC is a citizen of the foreign states, Guatemala and the British Virgin Islands.

42. Defendant transacts business within this district, through the marketing, supply, and sales of its products at numerous physical stores within this district.

43. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

44. Venue is in the Southern Division because plaintiff resides in New York County, which is where the events giving rise to the present claims occurred, in that plaintiff discovered the issues identified here within this county.

## Parties

45. Plaintiff Kevin Kelly is a citizen of New York, New York County, New York.

46. Defendant Beliv LLC is a Puerto Rico limited liability company with a principal place of business in San Juan, Puerto Rico.

47. Defendant's parent company, CBC, is a leading producer, distributor and seller of beverages, such as carbonated soft drinks ("CSDs"), juices and nectars, bottled water, isotonics, energy drinks, tea and beer.

48. CBC's products include 487 brands and 2,945 stock keeping units ("SKU").

49. This includes 142 brands and 1,727 SKUs that are owned and developed by third parties, such as PepsiCo, AmBev, and Beliv.

50. Beliv LLC is the commercial research, development, and marketing hub for CBC's Beliv division.

51. Through Beliv, CBC manages new ventures in expanding its portfolio of proprietary brands and developing new products for its health and wellness segments.

52. Since Beliv's center of operations is in Puerto Rico, it allows easy access to markets in the United States an outside of the Western Hemisphere.

53. Additionally, Beliv's location within United States jurisdiction allows it greater ability to protect its intellectual property under this nation's intellectual property laws.

54. Nectar Petit is one of Beliv's proprietary brands that was started to develop healthier and more natural and nutritional products, which capitalize on the fruit ingredients grown throughout Latin America and the Caribbean.

55. Nectar consists of fruit juice, water, pulp, and sugar.

56. Nectar is considered an authentic, traditional beverage, as the villagers who invented it derived energy for their daily tasks from consuming the fruit's pulp, instead of discarding it.

57. Defendant sells its Nectar Petit nectars in flavors including apple, mango, pineapple, guava, and peach.

58. The Products are sold throughout the United States.

59. This success owes to Defendant's quality products, the increasing appreciation of Americans for foods from Latin America, and the steadily increasing number of immigrants from Latin America and the Caribbean.

60. The Product is sold in stores of all kinds – bodegas, convenience stores, drug stores, grocery stores, big box stores, wholesale clubs and/or online.

61. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Walmart, within New York, between 2019 and 2021, among other times.

62. Plaintiff bought the Product because he expected it did not contain preservatives because that is what the front label said.

63. Plaintiff bought the Product at or exceeding the above-referenced price.

64. Plaintiff relied on the representations identified here.

65. Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

66. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

67. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

68. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

69. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Massachusetts and Connecticut who purchased the Product during the statutes of limitations for each cause of action alleged.[1]

70. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

71. Plaintiff's claims and basis for relief are typical to other members because all were

---

[1] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case.

subjected to the same unfair and deceptive representations and actions.

72. Plaintiff is an adequate representative because his interests do not conflict with other members.

73. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

74. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

76. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff and class members desired to purchase a product that did not contain preservatives.

79. Defendant's false and deceptive representations and omissions about the presence of preservatives was material in that it is likely to influence consumer purchasing decisions, as consumers are increasingly avoiding foods containing additives, such as preservatives.

80. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

81. Plaintiff relied on the representations and omissions.

82. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

83. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

84. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

85. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

86. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

87. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it did not contain preservatives.

88. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

89. This duty is based on Defendant's outsized role in the market for this type of product, as Nectar Petit is the leading brand of nectars, made by a company that has deep roots in the Latin American and Caribbean regions.

90. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

91. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

92. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

93. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

94. Defendant had a duty to truthfully represent the Product, which it breached.

95. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Nectar Petit brand, known for its authentic fruit nectars, many of which are or may be imported directly from Latin America and the Caribbean, where nectar is a local specialty and there exists expertise in the production of nectars.

96. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leader in traditional Latin American and Caribbean fruit beverages.

97. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

98. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

99.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it did not contain preservatives.

100.   Defendant possesses specialized knowledge that the Product contained preservatives, yet sought to conceal or omit these facts, by describing citric acid and ascorbic acid as an acidulant and vitamin C.

101.   Moreover, the records Defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

102.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

103.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   December 1, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com