UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/09/2022
```

------------------------------------------------------------------- X
                                                                    :
KEVIN KELLY, individually and on behalf of all others               :
similarly situated,                                                 :
                                                                    :
                              Plaintiff,                            :        21-cv-08134 (LJL)
                                                                    :
              -v-                                                   :        OPINION AND ORDER
                                                                    :
BELIV LLC,                                                          :
                                                                    :
                              Defendant.                            :
                                                                    :
------------------------------------------------------------------- X

LEWIS J. LIMAN, United States District Judge:

     Plaintiff Kevin Kelly ("Plaintiff" or "Kelly") brings this putative class action against

Beliv LLC ("Beliv" or "Defendant") alleging violations of New York General Business Law

("NYGBL") §§ 349 and 350; violations of the corresponding consumer fraud statutes of

Connecticut and Massachusetts; violations of the Magnuson-Moss Warranty Act ("MMWA");

breaches of express warranty and the implied warranty of merchantability; as well as negligent

misrepresentation, fraud, and unjust enrichment.

     Defendant moves, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), for

dismissal of the First Amended Class Action Complaint ("Complaint") on the grounds that it

fails to state a claim upon which relief can be granted and that Plaintiff lacks standing to bring

some of the claims alleged.  Dkt. No. 23.

     For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

     The Court accepts the well-pleaded facts of the Complaint, as supplemented by the

documents incorporated by reference therein, as true for purposes of the motion to dismiss.

Plaintiff purchased Nectar Petit (the "Product"), a juice-based beverage produced and marketed by Defendant, on one or more occasions from stores in New York, including Walmart, between 2019 and 2021.  Dkt. No. 8 ¶¶ 1, 54–55, 61.  The Product is described on its label as containing "No Preservatives."  *Id.* ¶ 1.  Market research indicates that many Americans prefer foods and drinks with "free from" claims because they believe such products are more natural, healthier, and less processed, and that they are willing to pay more for such products. *Id.* ¶¶ 2–5.

The Product's ingredient list identifies citric acid and ascorbic acid as two of the Product's ingredients.  *Id.* ¶ 6.  In its Overview of Food Ingredients, Additives, and Colors, the Food and Drug Administration ("FDA") has identified citric acid and ascorbic acid as "Names Found on Product Labels" that consumers should look for to determine if a food contains preservatives.  *Id.* ¶ 11.  Ascorbic acid is a modified form of Vitamin C used as a preservative. *Id.* ¶ 12.  In 2010, the FDA issued a warning to a different food and beverage company, which identified both ascorbic acid and citric acid as chemical preservatives.  *Id.* ¶ 13.  That warning stated:

> The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative[s] ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions.

*Id.*

The Product's ingredient list identifies ascorbic acid as an ingredient, but places the words "ascorbic acid" in parentheses after "Vitamin C," implying that the terms are equivalent: "Vitamin C (as Ascorbic Acid)."  *Id.* ¶ 18.  The FDA has authorized the use of ascorbic acid as a synonym for Vitamin C for purposes of describing a product's nutritional content, but it has not authorized it as a synonym for Vitamin C for purposes of an ingredient list.  *Id.* ¶ 20.  The

ingredient list also identifies citric acid as an acidulant, a compound that confers a tart, sour, or acidic flavor to foods. *Id.* ¶¶ 15, 16. Neither ingredient is identified as a preservative in the ingredient list. *Id.* ¶ 21.

Plaintiff claims that the Product's label is misleading first because the "No Preservatives" representation is false due to the presence of ascorbic acid and citric acid, and second because it designates ascorbic acid and citric acid according to their non-preservative functions as Vitamin C and an acidulant, respectively. *Id.* ¶ 14. Plaintiff alleges that had he or the hypothetical members of his proposed class "known the truth" that the Product contained preservatives, they would not have purchased the product, or else would not have been willing to pay as much for it. *Id.* ¶ 30. Plaintiff bases this claim partially on his own knowledge of himself, and partially on market research studies showing that consumers highly value products that contain no preservatives or other additives. *Id.* ¶¶ 2–5. Plaintiff alleges as well that Defendant held itself out as knowledgeable about the Product by virtue of its prominence as an importer and manufacturer of this and similar products and its roots in the Latin American and Caribbean regions, thus establishing a relationship of trust between Defendant and its customers. *Id.* ¶ 95. Finally, Plaintiff claims that Defendant possessed knowledge of its own misrepresentations and decided to make them anyway, evincing fraudulent intent, *id.* ¶¶ 99–102, and that its misrepresentations unjustly enriched Defendant at the expense of consumers, *id.* ¶ 103.

Plaintiff seeks certification of a multi-state class to pursue this litigation, injunctive relief directing Defendant to correct its labeling, restitution and disgorgement of Defendant's wrongfully obtained profits, compensatory and punitive damages, and costs and expenses including attorneys' fees. *Id.* at 12–13.

## PROCEDURAL HISTORY

Plaintiff filed a class action complaint on October 1, 2021, naming Kasim International Corporation as the sole defendant.  Dkt. No. 1.  On November 24, 2021, Plaintiff informed the Court that he had sued Kasim International erroneously and sought permission to amend the complaint, substituting Beliv as the defendant.  Dkt. No. 6.  On November 28, 2021, the Court granted Kelly leave to amend.  Dkt. No. 7.  Plaintiff filed the operative Complaint shortly thereafter.  Dkt. No. 8.

On March 15, 2022, Defendant filed its motion to dismiss and supporting documentation.  Dkt. Nos. 23–25.  On March 29, 2022, Plaintiff filed a memorandum of law in opposition to the motion to dismiss, Dkt. No. 27, and on April 5, 2022, Defendant filed a reply memorandum of law and a supporting declaration, Dkt. Nos. 28–29.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  Although the Court must accept all the factual allegations of a complaint as true, it is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims."  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235–36 (1974)).

A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendant moves to dismiss each of Plaintiff's claims, specifically (i) the NYGBL §§ 349 and 350 claims; (ii) the Massachusetts and Connecticut state law claims on behalf of a putative class of consumers in those states; (iii) Plaintiff's breach of warranty claims; and (iv) Plaintiff's claims for negligent misrepresentation, fraud, and unjust enrichment.[1]  Dkt. No. 24 at 6–17.  Defendant also argues that Plaintiff lacks standing to seek injunctive relief because he has not plausibly pleaded a likelihood of specific future harm and that all of the above claims be dismissed with prejudice, arguing that no amendments could be made to salvage any of Plaintiff's claims.  Dkt. No. 42 at 17–19.  The Court addresses each of these claims in turn.

## I.     New York General Business Law §§ 349 and 350

Defendant asks the Court to dismiss Plaintiff's NYGBL claims, arguing that a reasonable consumer would not be misled by the "No Preservatives" representation.  Defendant

---

[1] Defendant also appears to argue that Plaintiff may not bring a claim under the Federal Food, Drug, and Cosmetic Act ("FDCA") or its implementing regulations.  Dkt. No. 24 at 11.  Plaintiff, however, represents that it is "not seeking to privately enforce any regulations" or the FDCA.  Dkt. No. 27 at 9.  Accordingly, the Court does not address this issue.

argues that the "No Preservatives" label is true as the ingredients at issue have non-preservative functions in the Product, which the Product expressly identifies (identifying citric acid as an acidulant and ascorbic acid as a nutrient).  Dkt. No. 24 at 7.  Defendant also argues that Plaintiff has failed to allege that citric acid and ascorbic acid actually act as preservatives in the Product.  *Id.* at 9.

Section 349 of the NYGBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350.  To sustain a claim under either section, "a plaintiff must allege: (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result."  *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 675 (S.D.N.Y. 2021); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must allege that "on account of a materially misleading practice, [plaintiff] purchased a product and did not receive the full value of [their] purchase." (citation omitted)).  A deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Budhani*, 527 F. Supp. 3d at 675–76 (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  In determining whether a label is deceptive, "[c]ourts view each allegedly misleading statement . . . as a whole," *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (internal quotation marks and citation omitted), and "context is crucial," *Fink v. Time Warner*, 714 F.3d 739, 742 (2d Cir. 2013); *see Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) ("Courts 'view each allegedly misleading

statement in light of its context on the product label or advertisement as a whole.'" (quoting *Wurtzburger*, 2017 WL 6416296, at *3)); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (evaluating the "messages on the container . . . in sequence" in order to "analyze [their] total effect" on the consumer).

At the pleading stage, "a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer," *Fink*, 714 F.3d at 741, but it must proceed with care in doing so as the inquiry "is generally a question of fact not suited for resolution at the motion to dismiss stage," *Duran v. Henkel of N. Am.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases); *see Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14, *16 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable customer is a question of fact"; only in "'rare situation[s] [is] granting a motion to dismiss . . . appropriate' with respect to the issue of whether a reasonable consumer would be misled by representations about a product." (citation omitted)).  "[A]t least in some cases, 'a federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare' that reasonable consumers would not be misled." *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) (quoting *Verizon Directories Corp v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004) (noting that resolution of the issue may require "surveys, expert testimony, and other evidence of what is happening in the real world")).  However, "[P]laintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.  Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted

consumers, acting reasonably in the circumstances, could be misled." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (quoting *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020)).

In accordance with these general principles, courts generally dismiss deceptive labeling claims at the pleading stage where, for example, the inferences the complaint would draw are not supported by the representation on the label, *see, e.g., C.K. Lee v. Mondelez International, Inc. & Mondelez Global, LLC*, 2022 WL 16555586, at *11 (S.D.N.Y. Oct. 28, 2022) (granting motion to dismiss where plaintiff, without support, argued that reasonable consumer would understand the phrase "cacao" on the label to refer to "unprocessed cacao"); *Budhani*, 527 F. Supp. 3d at 677 ("The through line of these cases is that the word 'vanilla,' by itself, indicates a flavor, and the labels in question made no representation as to any particular ingredient(s) that were contained in the product or were the source of that flavor in the product."), where the misleading impression conveyed by the challenged language is dispelled by additional packaging language a reasonable consumer would be expected to consult, *see, e.g., Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y 2007) (holding that a reasonable consumer would not be misled into believing that a concert's date and time were guaranteed when the concert ticket states "DATE & TIME ARE SUBJECT TO CHANGE"); *see also Mantikas v. Kellogg Company*, 910 F.3d 633, 638 (2d Cir. 2018) (misleading impression on front of box not dispelled by ingredient list in small print on side of the box), or where plaintiff has suggested an inference that is incompatible with basic common sense, *see, e.g., Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 495, 501 (2d Cir. 2020) (holding that a reasonable consumer purchasing an Angus Steak & Egg Breakfast Sandwich for $4 from Dunkin' Donuts would not be misled into

thinking she was purchasing an intact steak).  *See generally Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 95 (S.D.N.Y. 2021).

On the other hand, courts generally do not dismiss such claims "[w]here a representation is capable of two possible reasonable interpretations," finding that "the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation."  *Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020) (finding complaint sufficiently alleges that a consumer could understand the phrase "ever-growing" as implying that the aggregate size of the library of Peloton's content would never decrease even though Peloton argued that it was "merely a representation that it consistently added new content to its content library"); *see Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact."); *see also, e.g., Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *15 (E.D.N.Y. Jul. 21, 2010) (labeling such as "vitamins + water = what's in your hand" could lead a consumer to believe that the product contains only vitamins and water); *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (use of the word "smokehouse" alongside fire-related imagery could lead a reasonable consumer to believe that the product was flavored via a smokehouse process rather than artificial smoke flavoring).

"This is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture."  *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (Nathan, J.).  Plaintiff plausibly alleges that a reasonable consumer may be misled by Defendant's labeling of the Product with the phrase "No Preservatives."  Contrary to

Defendant's contention, the word "preservative" does not appear only to refer to an ingredient that "actually function[s]" in a specific product to preserve a given product.  Dkt. No. 24 at 9. Instead, the term "preservative" appears to have two possible meanings:  First, it denotes an ingredient that actually functions to preserve a specific product.  Alternatively, and as relevant here, it may denote an ingredient that has the power or the tendency to preserve, regardless of whether it has a preserving function in a specific product.  Merriam-Webster defines "preservative" as "something that preserves *or has the power of preserving*."  *Preservative*, Merriam-Webster, https://www.merriam-webster.com/ (last visited Nov. 8, 2022) (emphasis added).  The Oxford English Dictionary similarly defines "preservative" as "[a] thing which preserves *or tends to preserve*."  *Preservative*, Oxford English Dictionary, https://www.oed.com/ (last visited Nov. 8, 2022) (emphasis added).  The Complaint also references a regulation that defines preservative as "any chemical that, when added to food, *tends* to prevent or retard deterioration," Dkt. No. 8 ¶ 10 (quoting 21 C.F.R. § 101.22(a)(5)) (emphasis added), and "tends" denotes that something is *likely* to behave in a certain way, not something that always does so, *see Tend*, Cambridge Dictionary, https://dictionary.cambridge.org/ (last visited Nov. 8, 2022) ("to be likely to behave in a particular way or have a particular characteristic."); *Tend*, Macmillan Dictionary, https://www.macmillandictionary.com/ (last visited Nov. 8, 2022) ("to usually do a particular thing").  In accordance with those definitions of "preservative," it is plausible that a reasonable consumer would understand a product label that says "No Preservatives" to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration regardless whether that was their primary or intended function with respect to the Product.

10

Plaintiff has also plausibly alleged that—despite its "No Preservatives" labeling—the Product contains two ingredients that the FDA has identified as having the tendency or power to preserve.  The Complaint alleges that the FDA warned a different company that its products were misbranded because "they contain the chemical preservative[s] ascorbic acid and citric acid," *id.* ¶13, and that the FDA identifies ascorbic acid and citric acids as ingredients consumers "should look for to determine if a food contains preservatives," *id.* ¶ 11.  In fact, Defendant does not appear to dispute that ascorbic acid and citric acid have preserving functions in other products.  *See* Dkt. No. 24 at 4.  The Court thus rejects Defendant's argument that the label is not misleading as matter of law merely because Plaintiff has not alleged that ascorbic acid and citric acids actually had preserving functions in the Product, as opposed to their other identified functions.  *Fishon*, 2020 WL 6564755, at *7 ("Where a representation is capable of two possible reasonable interpretations, the misleading one should not be rejected simply because there is an alternative, non-misleading interpretation.").

This holding is consistent with Judge Koeltl's opinion in *Mason v. Reed's Inc.*, which similarly involved claims under NYGBL §§ 349 and 350 relating to a "no preservatives" label on a product containing citric acid.  515 F. Supp. 3d 135 (S.D.N.Y. 2021).  Relying on the plaintiff's "detailed allegations, including that the FDA described citric acid as a preservative" and that "the FDA sent warning letters that suggested that citric acid was a preservative," the court found that "the plaintiff has stated plausibly that the 'no preservatives' label was false and misleading."  *Id.* at 143.  In reaching this decision, the court rejected defendant's argument that citric acid, at least as used in the defendant's product, does not function as a preservative, noting:

> The defendant cites to an FDA warning letter that states that if citric acid is functioning as a preservative, the product must disclose that it contains

preservatives.  The defendant mistakenly infers that the inverse must also be true, namely that if a product contains citric acid not functioning as a preservative that it need not disclose that it contains preservatives.  However, there is no basis to find that the safe harbor provisions would apply where citric acid, although a preservative, was being used only as a flavoring agent.

*Id.* at 145.  The district court further noted that "whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer."  *Id.*

Defendant's brief seeks to distinguish *Mason* from the case at hand by pointing out that Defendant has expressly described the ingredient's non-preservative functions, unlike in *Mason* where the defendant "simply listed citric acid as an ingredient and did not provide any information about its use in the product."  Dkt. No. 24 at 8.  However, Judge Koeltl's opinion in *Mason* did not turn on that fact.  To the contrary, Judge Koeltl expressly considered the fact that citric acid could be used as "only as a flavor agent" and stated that this did not change his conclusion, noting that "whether the citric acid in the products is a preservative is an objective fact independent of the subjective intentions of the products' manufacturer."  515 F. Supp. 3d at 145.

In reaching its decision, the Court also declines to follow the reasoning in *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 816 (E.D. Pa. 2017), which similarly considered whether products labeled as "No Preservatives Added" were materially misleading where those products contained citric acid.  In *Hu*, the district court granted a motion to dismiss, reasoning that the plaintiff failed to adequately allege either that the citric acid in the product actually functioned as a preservative, or that a reasonable consumer would identify it as a preservative even if it did not actually function to preserve the product.  *Id.* at 822–23.  The court rejected the plaintiff's argument that a reasonable consumer would define a product as a "preservative" by reference to its potential preservative properties, concluding that "Plaintiff's allegation regarding a

12

reasonable consumer's definition of a preservative is a legal conclusion, and Plaintiff has not provided any other allegations supporting her theory of the definition of a preservative." *Id.* at 821. The court further held that plaintiff's demonstration that citric acid generally has preservative effects was an inadequate substitute for "squarely alleg[ing]" that citric acid functioned as preservative in the particular product at issue. *Id.* at 821–22.

The *Hu* court's reasoning is unpersuasive. In reaching its decision, the district court noted that plaintiff had not supported her definition of preservative; however, as discussed, Plaintiff's definition of "preservative" is supported by the common definition of that term. Merriam-Webster, for example, defines preservative to include something that "has the power of preserving"—*i.e.*, something that *can* preserve as opposed to something that *actually functions* to preserve in a given context. *Preservative*, Merriam-Webster, https://www.merriam-webster.com/ (last visited Nov. 8, 2022). The *Hu* court never addressed that definition of "preservative," even though courts frequently look to the dictionary definitions of words to determine how a reasonable consumer may interpret them. *See, e.g.*, *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (looking to dictionary definition of "pure" in discussing whether labeling was misleading); *Fishon*, 2020 WL 6564755, at *8 (looking to dictionary definitions of "ever growing" and "growing" in denying motion to dismiss NYGBL claims); *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020) (looking to dictionary definition of "residue" and "trace" in determining whether label was misleading). With this potential definition in mind, it cannot be said that it would be "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived" by Defendant's labeling of the Product as "No Preservatives." *Hesse*, 463 F. Supp. 3d at 467. For these reasons, the Court denies Defendant's motion to dismiss with respect to these claims.

## II.     Multi-State Class Claims

Plaintiff seeks to certify a multi-state class action including consumers from Massachusetts and Connecticut who purchased the Product, states which Plaintiff claims have similar consumer fraud statutes to New York's GBL.  Dkt. No. 8. ¶ 69.  Defendant concedes that the pleading standards under the Massachusetts and Connecticut statutes "require the same materially misleading conduct as the claims under GBL §§ 359 & 350."  Dkt. No. 24 at 10.  However, Defendant urges the Court to dismiss Plaintiff's request for certification because Plaintiff has not purchased the Product in either Massachusetts or Connecticut, and therefore lacks standing to allege claims under the relevant consumer protection statutes of these states.  *Id.* at 9–10.

The issue of whether a plaintiff has standing to bring a class action under the state laws of multiple states was squarely addressed by the Second Circuit in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88 (2d Cir. 2018), which held that the question of whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III, *id.* at 96.  In that case, the parties agreed that the plaintiff had standing to sue under Connecticut's consumer protection statute, however, contested whether the plaintiff had "standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' consumer protection laws."  *Id.* at 92.  The Circuit noted that there had been "considerable disagreement over this question in the district courts" and thus wrote "to make explicit" that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), [] not a question of 'adjudicatory competence' under Article III."  *Id.* at 93 (internal citations omitted).

14

The Circuit noted that such an approach "acknowledges the obvious truth that class actions necessarily involve plaintiffs litigating injuries that they themselves would not have standing to litigate." *Id.* at 95.  The court further noted that: "Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place."[2] *Id.*  "Since *Langan*, a number of district court opinions have followed its reasoning to deny motions to dismiss state law claims on Article III standing grounds because the named plaintiff did not make in-state purchases and thereby suffer injury-in-fact in those states." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *21 (S.D.N.Y. Dec. 26, 2018).

In light of *Langan*, it is clear that Plaintiff does not lack standing under Article III to assert claims on behalf of unnamed class members from other states under those states' consumer protection laws.  Moreover, Defendant does not appear to contest predominance at this stage.  To the contrary, Defendant concedes that Massachusetts and Connecticut consumer protection statues "require the same materially misleading conduct as the claims under GBL §§ 349 & 350."  Dkt. No. 24 at 10.  Thus, the Court declines to dismiss Plaintiff's claims under other states' consumer protection laws at this stage for lack of Article III standing.  The question of whether Plaintiff will be able to represent members of a multi-state class and

---

[2] The only case cited by Defendant for the proposition that a plaintiff lacks standing to bring claims under multiple states' consumer protection laws, *Stewart v. Ocean State Jobbers, Inc.*, 2018 WL 379011 (D. Conn. Jan. 10, 2018), was decided before *Langan* and thus is not persuasive.

whether the putative multi-state class otherwise satisfies the standards of Federal Rule of Civil Procedure 23 will have to await a motion for class certification.

Yet, while *Langan* forecloses dismissal of Plaintiff's multi-state claims for lack of standing, it does not preclude dismissal for failure to state a claim under the other states' laws. *See Gibson v. Bartlett Dairy, Inc.*, 2022 WL 784746, at *9 (E.D.N.Y. Mar. 15, 2022); *Actavis, Plc.*, 2018 WL 7197233, at *21–22 ("Nothing in *Langan*, as I read it, precludes a defendant from moving to dismiss a CAFA plaintiff's claims under a particular statute pursuant to Rule 12(b)(6) on the grounds that the plaintiff fails to state a claim for its own account—a question entirely different from whether it has constitutional standing."). Defendant accordingly urges that Plaintiff's state law claims in Massachusetts and Connecticut be dismissed because, even if he has standing to pursue those claims, Plaintiff has failed to state a claim under the respective state laws. The only argument Defendant makes (and thus the only one the Court addresses with respect to Massachusetts) is based on syllogism: according to Defendant, Plaintiff fails to state a NYGBL claim, the other states' laws are subject to the same pleading standard as the NYGBL, and thus Plaintiff fails to state a claim under the other states' laws. Dkt. No. 24 at 10. Because the Court finds that Plaintiff has stated a NYGBL claim, Defendant's request to dismiss the Massachusetts and Connecticut claims on this basis is unavailing.

Plaintiff's multi-state class action claims brought under the Connecticut Unfair Trade Practices Act ("CUTPA"), nonetheless, are subject to dismissal for a different reason. CUTPA bars a nonresident of Connecticut who was injured outside of Connecticut from bringing class action claims under CUTPA. *See* Conn. Gen. Stat. Ann. § 42-110g(a)–(b); *Bartlett Dairy, Inc.*, 2022 WL 784746, at *9 ("CUTPA requires in-state residency of a class representative."); *Chapman v. Priceline Grp., Inc.*, 2017 WL 4366716, at *6 (D. Conn. Sept. 30, 2017) ("But a

nonresident 'suffering ascertainable loss outside of Connecticut from unlawful conduct occurring inside the state . . . may not bring a class action because such plaintiff could not be representative of class members with the statutorily required in-state residency or injury characteristic.'" (citation omitted)); *Fraiser v. Stanley Black & Decker, Inc.*, 109 F. Supp. 3d 498, 505 (D. Conn. 2015); *Metro. Enter. Corp. v. United Techs. Int'l, Corp., Pratt & Whitney Large Com. Engines Div.*, 2004 WL 1497545, at *4 (D. Conn. June 28, 2004).  Therefore, Plaintiff—a New York resident who claims to have purchased the Product at stores within New York—lacks "statutory standing" to bring a class action claim under CUTPA.  *See Bartlett Dairy, Inc.*, 2022 WL 784746, at *9–10; Dkt. No. 8 ¶¶ 45, 61.  Accordingly, Defendant's request to dismiss Plaintiff's multi-state claims is denied, except with respect to any class action, consumer protection claims under CUTPA.

## III.    Warranty Claims

Defendant also moves to dismiss Plaintiff's claims for breaches of express warranty, the implied warranty of merchantability, as well as under the MMWA.

## A.  Express Warranty

Plaintiff contends that Defendant has breached an express warranty by expressly warranting to Plaintiff and hypothetical class members that the Product did not contain preservatives.  Dkt. No. 8 ¶ 87.  Defendant's only rebuttal to the express warranty claim is that New York courts have dismissed express warranty claims where they have also dismissed NYGBL claims because the representations were insufficient as a matter of law to mislead a reasonable consumer.  Dkt. No. 24 at 13.  This Court, however, has not dismissed Plaintiff's NYGBL claims, so this argument is unavailing.  The Court therefore denies the motion to dismiss Plaintiff's express warranty claims.

**B.  Implied Warranty of Merchantability**

Plaintiff's implied warranty claims do not fare as well.  "To be merchantable, goods 'must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any."  *Budhani*, 527 F. Supp. 3d at  685 (quoting N.Y. U.C.C. § 2-314(2)).  "A breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'"  *Id.* (quoting N.Y. U.C.C. § 2-314(2)(c)).  "Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality."  *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015).  Accordingly, to state a claim for breach of the implied warranty of merchantability, Plaintiff must "allege that the Product is unfit for human consumption."  *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *7 (S.D.N.Y. Mar. 4, 2022).

Plaintiff does not so allege.  Plaintiff merely states that he "bought the Product because he expected it did not contain preservatives" and "would not have purchased the Product if he knew the representations were false and misleading."  Dkt. No. 8 ¶¶ 62, 65.  Although Plaintiff may be disappointed that the product is not what he thought it was, "a warranty of merchantability . . . does not mean that the product will fulfill a buyer's every expectation but rather simply provides for a minimum level of quality."  *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *5 (E.D.N.Y. July 21, 2010).  "Because Plaintiff does not suggest that the Product is not fit for human consumption, he fails to state a claim for breach of the implied warranty of merchantability under New York law."  *Budhani*, 527 F. Supp. 3d at 686.

Moreover, under New York law, "absent any privity of contract between Plaintiff and Defendant" a claim for breach of the implied warranty of merchantability "cannot be sustained

as a matter of law except to recover for personal injuries." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015). Plaintiff does not allege that he purchased the Product directly from Defendant, instead noting that he purchased the Product from "stores including Walmart." Dkt. No. 8 ¶ 61. Thus, Plaintiff has not adequately alleged privity. *See Budhani*, 527 F. Supp. 3d at, 686 (finding plaintiff had not adequately alleged privilege where plaintiff "acknowledges that he did not purchase the Product directly from Defendant, instead purchasing the Product from third-party retailers, such as Whole Foods Market, local delis and/or bodegas, and chain drugstores"); *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) (finding a lack of privity where plaintiff purchased product at issue from a third-party, not the defendant, and did not allege personal injuries).

## C.  Magnuson-Moss Warranty Act

"The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)). Defendant argues that Plaintiff's claims under the MMWA fail for two reasons: no state warranty claim is adequately pleaded, and "product descriptions" are not written warranties for purposes of the MMWA.

Defendant's first contention is rejected because, as discussed *supra* Section III.A., the Court has denied Defendant's request to dismiss Plaintiff's express warranty claim. However, Defendant's statement that its Product contained "No Preservatives" does not meet MMWA's definition of a "written warranty," which is "any affirmation of fact or written promise . . . which . . . affirms or promises that such material . . . will meet a specified level of performance *over a specified period of time*." 15 U.S.C. § 2301(6)(A) (emphasis added). In this case, the attestation that the Product contains no preservatives is a "product description"; it is not a

"promise of performance over time."[3]  *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378

(S.D.N.Y. 2014) (holding that the "restores enamel" label on mouthwash was a "product

description," not a "promise of performance over time"); *see Kamara v. Pepperidge Farm, Inc.*,

570 F. Supp. 3d 69, 81 (S.D.N.Y. 2021) (finding that the "Golden Butter" statement on a

package of crackers did not implicate the MMWA because it is a product description unrelated

to "defect-free workmanship or a specified level of performance over time"); *In re Frito-Lay N.*

*Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) (holding that

"[a]n 'All Natural' label does not warrant a product free from defect," "[n]or does it constitute a

promise that the product will meet a specified level of performance over a specified period of

time" (internal quotation marks and citation omitted)).  Accordingly, Plaintiff's claim under the

MMWA fails as a matter of law.

## IV.    Negligent Misrepresentation

Defendant moves to dismiss Plaintiff's negligent misrepresentation claim on two

grounds: first, that failure to state a claim of misrepresentation under the NYGBL dooms a

common law negligent misrepresentation claim; and second, because Plaintiff has not pleaded a

special relationship of trust between Defendant and Plaintiff.  As discussed, Defendant's first

argument fails because Plaintiff has stated a claim under the NYGBL.  However, Plaintiff's

negligent misrepresentation claim must be dismissed because Plaintiff has not plausibly alleged

the existence of a special relationship or a privity-like relationship with Defendant.

---

[3] Defendant appears to argue that the phrase "No Preservatives" is a promise that the Product
would "meet a specified level of performance over a specified period of time" because it meant
"that it would not degrade or be diminished in quality without the addition of preservative
ingredients." Dkt. No. 27 at 13–14.  But, this is plainly not what the phrase "No Preservatives"
means.  If anything, "No Preservatives" is better understood as representing that the Product
may be expected to degrade or diminish in quality overtime since it does not contain any
preserving ingredients.

To state a claim for negligent misrepresentation under New York law, a plaintiff must demonstrate that:

> (1) The defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).  Whether a "special relationship" exists depends on "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Budhani*, 527 F. Supp. 3d at 684 (quoting *Suez Equity Invs. L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)); *see Kimmell v. Schaefer*, 263, 675 N.E.2d 450, 454 (N.Y. 1996).

The transactions alleged by Plaintiff are insufficient to establish a special relationship for purposes of a negligent misrepresentation claim.  An ordinary, arms-length relationship between a buyer and seller of a standard consumer product does not establish a special relationship of trust or confidence.  *See Izquierdo v. Mondelez International, Inc.*, 2016 WL 6459832, at * 8 (S.D.N.Y Oct. 26, 2016) ("[A] basic commercial transaction does not give rise to a special relationship."); *Stoltz*, 2015 WL 5579872, at *23–25 (no "special relationship" exists between manufacturer of allegedly misbranded product and consumer.); *Alley Sports Bar, LLC v. Simplexgrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014) ("special relationship" requires a closer degree of trust than that between an ordinary buyer and seller.); *Dall. Aerospace, Inc. v. CIS Air Corp.*, 2002 WL 31453789, at *3 (S.D.N.Y. Oct. 31, 2002) (same), *aff'd*, 352 F.3d 775 (2d Cir. 2003); s*ee also Campbell*, 516 F. Supp. 3d at 389–90 (collecting

cases for the proposition that engaging in a "basic commercial transaction . . . does not give rise to the kind of special relationship necessary to maintain a claim for negligent misrepresentation"). Furthermore, "[Plaintiff] does not allege that []he had any contact with [Defendant] or its representatives, nor does []he allege that []he purchased the product directly from [Defendant]." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021).

Plaintiff nevertheless argues that Defendant stands in a special position of trust relative to its customers due to its "special knowledge and experience, as custodians and owners of the Nectar Petit brand, known for its authentic fruit nectars, many of which are or may be imported directly from Latin America and the Caribbean, where nectar is a local specialty and there exists expertise in the production of nectars." Dkt. No. 8 ¶ 95. "The Second Circuit has held that a sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where 'the complaint emphatically alleges the other two factors enunciated in [*Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996)].'" *Westbrae Nat., Inc.*, 518 F. Supp. 3d at 807 (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188–89 (2d Cir. 2004)) (cleaned up). "Under *Kimmell*, a court considers whether the person making the representation holds 'unique or special expertise' and whether that person was 'aware of the use to which the information would be put and supplied it for that purpose.'" *Id.* (quoting *Morgan Guar. Trust Co. of N.Y.*, 375 F.3d at 188–89). But, conclusory allegations—without any factual support—that a Defendant held "unique or special expertise" in a product, service, or sale of a product are insufficient to plausibly sustain a claim for negligent misrepresentation. *See Budhani*, 527 F. Supp. 3d at 684; *Campbell*, 516 F. Supp. 3d at 349 & n.8 ("This Court disregards the conclusory allegations in the complaint that the duty is based on defendant's position as an entity which has held itself out as having special knowledge

and experience in the production, service and/or sale of the product or service type." (internal quotation marks omitted)).

Here, Plaintiff's allegations that Defendant had special knowledge and experience are conclusory. Any company necessarily can be said to have expertise in its own product. Thus, Plaintiff's allegation that Defendant had "expertise in the production of nectars" is insufficient to establish that Defendant had a "unique or special expertise." Plaintiff's negligent misrepresentation claim is dismissed.

## V.    Fraud

Defendant moves to dismiss Plaintiff's fraud claim because Plaintiff fails to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). To state a claim for fraud under New York law, a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). Claims for fraud must also satisfy the heightened pleading requirements of Rule 9(b) and be pleaded "with particularity." *See B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010). Rule 9(b) requires a plaintiff to "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted). Plaintiff may raise this inference "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290–91.

Plaintiff fails to meet this standard because the allegations do not give rise to an inference of fraudulent intent. Plaintiff alleges that Defendant's records gave it actual or constructive knowledge of the falsity of its "no preservatives" representation, and that Defendant's knowledge that the Product was inconsistent with its representation evinces fraudulent intent. Dkt. No. 8 ¶¶ 99–102. But "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25); *see Mondelez International, Inc. & Mondelez Global, LLC*, 2022 WL 16555586, at *14 (finding plaintiff had not adequately alleged scienter under Rule 9(b) for a common law fraud claim where complaint claimed that defendant knew its representations were false); *Budhani*, 527 F. Supp. 3d at 687 (dismissing fraudulent claim where allegation of fraudulent intent was that defendant failed to accurately identify the product on its label when it knew this was untrue). Plaintiff fails to evince a strong inference of fraudulent intent and thus the fraud claim is dismissed.

## VI.    Unjust Enrichment

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016)

(internal quotation marks omitted).  Accordingly, district courts in this Circuit dismiss unjust enrichment claims that "simply duplicate[], or replace[], a conventional contract or tort claim." *Ebin v. Kangadis Food, Inc.*, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013); *see Price v. L'Oreal USA, Inc.*, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) ("All of the claims in the Complaint are based on the same alleged misrepresentation by Defendants . . . .  Accordingly, Plaintiff's New York unjust enrichment claim is dismissed as duplicative."); *Bowring v. Sapporo U.S.A. Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Plaintiff's unjust enrichment claim relies on the same facts as her other causes of action in tort.  Because this claim is duplicative, it is dismissed."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) ("Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim.  Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed.").

Plaintiff's unjust enrichment claim is predicated on the same facts and theories as his statutory claims under NYGBL §§ 349 and 350 and his tort claims for negligent misrepresentation and breach of warranty.  The claim is expressed in a single sentence: "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits."  Dkt. No. 8 ¶ 103.  This Court has previously dismissed an unjust enrichment claim which was articulated similarly and which, as in the case at hand, was duplicative of plaintiff's other claims.  *Budhani*, 527 F. Supp. 3d at 688. For the same reason, the Court grants Defendant's request to dismiss this claim.

## VII.    Injunctive Relief

Plaintiff seeks injunctive relief in the form of directing Defendant to correct its allegedly misleading labeling practices.  Dkt. No. 8 at 12–13.  "Although past injuries may provide a

basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *see Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

Plaintiff has not plausibly alleged a threat of future injury.  Plaintiff alleges that "[h]ad Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it."  Dkt. No. 8 ¶ 30.  Plaintiff thus admits to being "on notice of what he claims to be the misrepresentations and omissions."  *Budhani*, 527 F. Supp. 3d at 688. Accordingly, "even if he had sustained a harm in the past, he will not be harmed again in the same way in the future absent an injunction."  *Id.* at 688; *Berni*, 964 F.3d at 147 ("[P]ast purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item."); *see Nicosia*, 834 F.3d at 239; *Goldstein v. Walmart, Inc.*, 2022 WL 16540837, at *14 (S.D.N.Y. Oct. 28, 2022) ("Plaintiff's injury from not being able to rely on the labels in the future, and thus not being able to purchase the products, only manifests if Plaintiff would have otherwise purchased the Product again, which remains entirely conjectural and hypothetical—as noted in *Berni*, there is no reason why Plaintiff would choose to buy the product again in the future.").

While Plaintiff represents that he "intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition," Dkt. No. 8 ¶ 68, this allegation does not suffice to allege a threat of future injury for purposes of injunctive relief.  In rejecting an identical argument in a prior case, this Court stated that "the only injunctive relief he would be entitled to . . . is an order directing Defendants to cease their allegedly violative activity" and "would not be entitled to an order

compelling Defendants to manufacture the Product to his liking." *Budhani*, 527 F. Supp. 3d at 688; *cf. Kommer v. Bayer Consumer Health*, 710 F. App'x 43 (2d Cir. 2018) (holding that claim for injunctive relief was properly dismissed for lack of standing where plaintiff alleged that because he knew of the defendant's deception, he no longer intended to purchase defendant's product).  The claim for injunctive relief thus must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted is GRANTED IN PART and DENIED IN PART.  The Complaint is dismissed as to the CUTPA class claims as well as the implied warranty, MMWA, negligent misrepresentation, fraud, and unjust enrichment claims.  The prayer for injunctive relief is also dismissed.  However, the motion to dismiss is denied as to Plaintiff's NYGBL §§ 349 and 350 claims, the remaining multi-state class claims, as well as Plaintiff's express warranty claim.

The Clerk of Court is respectfully directed to close Dkt. No. 23.


SO ORDERED.

Dated: November 9, 2022
      New York, New York
                                       LEWIS J. LIMAN
                              United States District Judge