UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                            :

KEVIN KELLY, individually and on behalf of all others   :
similarly situated,                                  :
                                            :
                        Plaintiff,           :                 21-cv-8134 (LJL)
                                            :
                -v-                           :           OPINION AND ORDER
                                            :

BELIV LLC,                                     :
                                            :
                         Defendant.            :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__03/12/2024__

LEWIS J. LIMAN, United States District Judge:

Plaintiff Kevin Kelly ("Plaintiff" or "Kelly") brings this putative class action against Beliv LLC ("Beliv" or "Defendant") alleging that Defendant violated New York General Business Law ("NYGBL") §§ 349 and 350 by falsely and misleadingly labeling Nectar Petit fruit nectar (the "Product").  Dkt. Nos. 1, 8.

Presently before the Court are: (1) Kelly's motion for class certification pursuant to Federal Rule of Civil Procedure 23, Dkt. No. 40; (2) Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), Dkt. No. 59; (3) Defendant's motion to strike the declaration of Plaintiff's expert, Dr. Andrea Lynn Matthews (the "Matthews Declaration"), pursuant to Federal Rule of Evidence 702, Dkt. No. 64; and (4) Defendant's motion to strike the declaration of Marc A. Meyers (the "Meyers Declaration") as untimely pursuant to Federal Rule of Civil Procedure 37(c), Dkt. No. 73.[1]  For the following reasons, Defendant's motion for

-------------------------------------

[1] Defendant stated initially that it moved to strike the Meyers Declaration pursuant to Rule 702. Dkt. No. 73.  However, Defendant clarified in its memorandum of law in support of its motion, and in its reply memorandum of law, that it moves to strike the Meyers Declaration pursuant to Rule 37(c), rather than Rule 702.  Dkt. No. 75 at 2 n.2; Dkt. No. 81 at 4–5.

summary judgment is granted, Defendant's motion to strike the Meyers Declaration is granted, and the remaining motions are denied as moot.

## BACKGROUND

### I.      Local Civil Rule 56.1 Statements

The facts below, which are undisputed unless otherwise noted, are drawn largely from Defendant's statement of undisputed material facts submitted pursuant to the Southern District's Local Civil Rule 56.1.  Dkt. No. 62.

Plaintiff failed to file a Rule 56.1 Statement, even though Defendant's counsel conferred with Plaintiff's counsel prior to Defendant's submission of its Rule 56.1 Statement.  Dkt. No. 76 ¶¶ 3–4.  In its Rule 56.1 Statement, Defendant stated that, after conferring with Plaintiff's counsel, Plaintiff disputed paragraphs 2, 14, 17–18 and 20 of Defendant's Rule 56.1 Statement, but did not dispute paragraphs 1, 3–13, 15–16, 19. [2]  Dkt. No. 62 at 1 n.1.  Defendant's representation of Plaintiff's position in its own Rule 56.1 Statement, however, does not excuse Plaintiff from his failure to comply with Local Rule 56.1.

Local Rule 56.1(b) requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving

---

[2] With respect to the paragraphs that Plaintiff disputes, the asserted facts are all immaterial, except for the assertions in paragraphs 17, 18, and 20.  Dkt. No. 62 ¶¶ 17–18, 20.  Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (Sotomayor, J.) (collecting cases); *H&H Acquisition Corp. v. Fin. Intranet Holdings*, 2010 WL 11828244, at *2 (S.D.N.Y. May 3, 2010) ("Plaintiff was required by Local Rule 56.1 to submit a counterstatement of facts in opposition to Defendants' Motions for Summary Judgment. When Plaintiff failed to do so, the Court was not required to sift through the enormous record of this case in order to find the evidence to which Plaintiff now points."); *Rodriguez v. City of New York*, 2013 WL 3584834, at *1 n.2 (S.D.N.Y. July 15, 2013).  However, a review of the record reveals that Plaintiff has not identified evidence that would create a genuine issue of fact for trial in connection with the asserted facts.

party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b). Local Rule 56.1(c) provides further that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L.R. 56.1(c); *see also T.Y. v. New York City Dep't of Educ*., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."); *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 507 (S.D.N.Y. 2014) ("If the opposing party [] fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule.").

Because Plaintiff has failed to file a Rule 56.1 statement, the Court deems the properly supported facts in Defendant's Rule 56.1 Statement admitted. *See Dung Nguyen v. Morrison Healthcare*, 412 F. Supp. 3d 196, 198 n.1 (E.D.N.Y. 2018) ("[T]he facts in Defendant's Rule 56.1 Statement are deemed admitted because Plaintiffs failed to file a timely Rule 56.1 Statement in opposition."); *Sam Jin World Trading, Inc. v. M/V Cap San Nicolas*, 2010 WL 2670847, at *2 (S.D.N.Y. July 2, 2010) ("Because Plaintiff has failed to submit a response to [defendant's] Rule 56.1 Statement, the Court concludes that the facts asserted in [defendant's] statement are uncontested and admissible.").

The record is construed in Kelly's favor because he is the nonmoving party.

## II.   Facts

Plaintiff purchased the Product, a nectar beverage produced and marketed by Defendant, on two occasions from a Walmart store on Long Island, New York in 2020 or 2021. Dkt. No. 62

¶¶ 5, 6.  Plaintiff purchased the Product in a pack of three 6.8-ounce containers.  *Id.* ¶¶ 8, 9.
Each individual 6.8-ounce beverage was packaged in a Tetra Pak container, which resembles a
"milk carton."  *Id.*  The Product was also available for purchase in other sizes and in different
packaging, including in an 11.2-ounce Tetra Pak container or can, and in a 33.8-ounce Tetra Pak
container.  *Id.* ¶ 10.  The Product's label stated that the Product had "No Preservatives" and that
it was made "with VITAMIN C."  *Id.* ¶ 11.  The Product's label also included a list of
ingredients as follows: "Water, mango pulp concentrate, sugar, citric acid (as acidulant),
Cellulose gum (as stabilizer), Vitamin C (as ascorbic acid) and mango flavor."  *Id.*  Finally, the
Product's label stated that the Product contained 90% of the daily value for Vitamin C, and that
the Product should be kept in a "cool, dry place," needing refrigeration only after opening.  *Id.*
¶¶ 11–12.

Plaintiff contends that the Product's label is false and misleading because: (1) it
represents that the Product contains "No Preservatives" when the Product contains citric and
ascorbic acids; and (2) designates citric and ascorbic acids according to their non-preservative
functions as an acidulant and Vitamin C, respectively.  Dkt. No. 8 ¶¶ 6, 14–15, 18.  Plaintiff
alleges that had he or the members of his proposed class "known the truth" that the Product
contained preservatives,[3] they would not have purchased the Product, or otherwise would not
have been willing to pay as much for it.  *Id.* ¶¶ 30–31, 65–67, 82.

## PROCEDURAL HISTORY

On October 1, 2021, Plaintiff filed a class action complaint, naming Kasim International
Corporation ("Kasim") as the sole defendant.  Dkt. No. 1.  Plaintiff brought claims alleging
violations of NYGBL §§ 349 and 350; violations of the corresponding consumer fraud statutes of

---

[3] Defendant denies Plaintiff's allegations that the citric and ascorbic acids function as preservatives in the Product.  Dkt. No. 62 ¶ 3.

Connecticut and Massachusetts; violations of the Magnuson-Moss Warranty Act ("MMWA"); breaches of express warranty and the implied warranty of merchantability; as well as negligent misrepresentation, fraud, and unjust enrichment. *Id.* ¶¶ 65–91. On November 24, 2021, Plaintiff informed the Court that he had sued Kasim erroneously and sought permission to amend the complaint, substituting Beliv as the defendant. Dkt. No. 6. On November 28, 2021, the Court granted Kelly leave to amend. Dkt. No. 7. Plaintiff filed the First Amended Complaint ("FAC") shortly thereafter. Dkt. No. 8.

On March 15, 2022, Defendant filed a motion to dismiss each of Plaintiff's claims, along with supporting documentation. Dkt. Nos. 23–25. On March 29, 2022, Plaintiff filed a memorandum of law in opposition to the motion to dismiss. Dkt. No. 27. On April 5, 2022, Defendant filed a reply memorandum of law and a declaration in further support of the motion to dismiss. Dkt. Nos. 28–29. On November 9, 2022, the Court granted in part, and denied in part, Defendant's motion to dismiss. Dkt. No. 31.

The Court held first that Plaintiff "plausibly allege[d] that a reasonable consumer may be misled by Defendant's labeling of the Product with the phrase 'No Preservatives,'" and thus, declined to dismiss Plaintiff's NYGBL claims. *Id.* at 9. Specifically, the Court concluded that it was "plausible that a reasonable consumer would understand a product label that says 'No Preservatives' to mean that the product did not contain any ingredients that would tend to prevent or retard deterioration," and that Plaintiff had plausibly alleged that despite the label, the Product contained "two ingredients that the FDA has identified as having the tendency or power to preserve." *Id.* at 10–11.

The Court held next that Plaintiff did not lack standing under Article III to assert claims on behalf of unnamed class members from Massachusetts and Connecticut under those states'

consumer protection laws, but that Plaintiff's claims brought under the Connecticut Unfair Trade Practices Act ("CUTPA") were subject to dismissal for a different reason. *Id.* at 15–16. CUTPA bars a nonresident of Connecticut who was injured outside of Connecticut from bringing class action claims under CUTPA. *Id.* at 16. Accordingly, the Court denied Defendant's motion to dismiss Plaintiff's multi-state claims, except with respect to any class action consumer protection claims under CUTPA. *Id.* at 17.

The Court proceeded then to address Defendant's motion to dismiss Plaintiff's claims for breaches of express warranty, the implied warranty of merchantability, and the MMWA. First, having declined to dismiss Plaintiff's NYGBL claims, the Court denied Defendant's motion to dismiss the express warranty claims. *Id.* Second, the Court dismissed Plaintiff's claim for breach of the implied warranty of merchantability after finding that Plaintiff did not allege that the Product was unfit for human consumption and that Plaintiff did not adequately allege privity of contract with Defendant. *Id.* at 18–19. Third, the Court granted Defendant's motion to dismiss Plaintiff's claim under the MMWA, holding that Defendant's statement that the Product contained "No Preservatives" did not constitute a written warranty under the statute's definition. *Id.* at 19–20.

Next, the Court dismissed Plaintiff's negligent misrepresentation, fraud, and unjust enrichment claims, as well as Plaintiff's claim for injunctive relief. The Court granted Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim after holding that Plaintiff did not plausibly allege the existence of a special or privity-like relationship with Defendant, as required to state a claim for negligent misrepresentation under New York law. *Id.* at 20–23. Proceeding to Plaintiff's fraud claim, the Court agreed with Defendant that Plaintiff failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Id.* at

24.  The Court, concluding that Plaintiff failed "to evince a strong inference of fraudulent intent," granted Defendant's motion to dismiss the fraud claim.  *Id.*  The Court then dismissed Plaintiff's unjust enrichment claim because it found that it was duplicative of Plaintiff's claims under the NYGBL and his tort claims for negligent misrepresentation and breach of warranty.  *Id.* at 25. Finally, the Court dismissed Plaintiff's claim for injunctive relief because Plaintiff did not plausibly allege "a threat of future injury."  *Id.* at 26–27.

Following the Court's Opinion and Order on its motion to dismiss, Defendant filed an Answer to the FAC on November 23, 2022, Dkt. No. 32, as well as an Amended Answer to the FAC on December 1, 2022, Dkt. No. 33.

On April 3, 2023, Plaintiff filed the motion for class certification pursuant to Federal Rule of Civil Procedure 23, Dkt. No. 40, along with a memorandum of law in support of the motion, Dkt. No. 41.  In his memorandum of law in support of the motion for class certification, Plaintiff withdrew his class-action claims under Massachusetts law.  *Id.* at 1 n.1; Dkt. No. 63 at 1 n.1.  On June 27, 2023, in accordance with an agreed upon briefing schedule established by the parties, Dkt. No. 44, Defendant filed a memorandum of law and two declarations in opposition to the motion for class certification, Dkt. Nos. 47–51.  On July 18, 2023, Plaintiff filed a reply memorandum in further support of the motion for class certification.  Dkt. No. 54.

On September 11, 2023, Defendant filed its motion, pursuant to Federal Rule of Civil Procedure 56(a), for an Order granting it summary judgment and dismissing the FAC.  Dkt. No. 59.  That same day, Defendant submitted two declarations in support of the motion, a memorandum of law in support of the motion, and a Rule 56.1 Statement.  Dkt. Nos. 60–63.  On October 11, 2023, Plaintiff submitted a memorandum of law and declaration in opposition to Defendant's motion.  Dkt. Nos. 69–70.  In his memorandum of law in opposition to Defendant's

motion for summary judgment, Plaintiff withdrew his claim based on breach of express

warranty.  Dkt. No. 69 at 1 (stating that Plaintiff "shall proceed solely for violations of [NYGBL]

§§ 349 and 350").  On October 25, 2023, Defendant filed a reply memorandum of law and

declaration in further support of its motion for summary judgment.  Dkt. Nos. 76–77.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the

outcome of the suit under [] governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  And "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,

137 (2d Cir. 2009).  In determining whether there are any genuine issues of material fact, the

Court must "view the evidence in the light most favorable to the party against whom summary

judgment is sought and must draw all reasonable inferences in his favor."  *L.B. Foster Co. v. Am.*

*Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

The party seeking summary judgment bears the burden of demonstrating that "there is no

genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  If the movant meets its burden,

"the nonmoving party must come forward with admissible evidence sufficient to raise a genuine

issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeusert Co.*, 536

F.3d 140, 145 (2d Cir. 2008).  To survive summary judgment, the nonmoving party "may not

rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593

F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995)),

and must "do more than simply show that there is some metaphysical doubt as to the material

facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The

non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

## DISCUSSION

In his FAC, Plaintiff alleged violations of NYGBL §§ 349 and 350; violations of the corresponding consumer fraud statutes of Connecticut and Massachusetts; violations of the MMWA; breaches of express warranty and the implied warranty of merchantability; as well as negligent misrepresentation, fraud, and unjust enrichment. Dkt. No. 8. After the Court dismissed Plaintiff's claims for violation of CUTPA, violation of the MMWA, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and unjust enrichment, Dkt. No. 31, Plaintiff withdrew his claims under Massachusetts law, Dkt. No. 41, and for breach of express warranty, Dkt. No. 69. Thus, the only claims remaining before the Court are for violations of NYGBL §§ 349 and 350.

Because Kelly has failed to produce evidence to raise a triable issue of fact as to whether he suffered an injury as a result of Defendant's alleged mislabeling of the Product, Defendant's motion for summary judgment is granted. Before turning to the merits of Defendant's motion for summary judgment, the Court discusses Defendant's motion to strike the Meyers Declaration, which the Court strikes because it is untimely. The remaining motions are denied as moot.

## I.    Meyers Declaration

Defendant moves to strike the Meyers Declaration as untimely pursuant to Federal Rule of Civil Procedure 37(c)(1). Under Rule 37(c)(1), a party that fails to "identify a witness as required by Rule 26(a)," is prohibited from using that "witness to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule

26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use" to present expert testimony. *Id.* 26(a)(2)(A). The disclosure "must be accompanied by a written report" where, as here, "the witness is one retained or specially employed to provide expert testimony in the case." *Id.* 26(a)(2)(B). The purpose of Rule 26 is "to prevent the practice of 'sandbagging' an opposing party with new evidence." *Morritt v. Stryker Corp.*, 2011 WL 3876960, at *5 (E.D.N.Y. Sept. 1, 2011) (quoting *DeLuca v. Bank of Tokyo–Mitsubishi UFJ, Ltd.*, 2008 WL 857492, at *12 (S.D.N.Y. Mar. 29, 2008)). "The 'duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses.'" *Id.* (quoting *Lamarca v. United States*, 31 F.Supp.2d 110, 122 (E.D.N.Y. 1999)).

Rule 37 applies at the summary judgment stage. *NRG Power Mktg., Inc. v. Detroit Edison Co.*, 2009 WL 10739541, at *2 (S.D.N.Y. Feb. 6, 2009). "A district court has wide discretion to impose sanctions, including severe sanctions," under Rule 37. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006).

The Court's Revised Case Management Plan and Scheduling Order set August 11, 2023, as the deadline for expert discovery. Dkt. No. 38 ¶ 8 ("All expert discovery, including disclosures, reports, production of underlying documents, and depositions shall be completed by 8/11/2023."). Both parties submitted one expert declaration in advance of the August 11, 2023, deadline: Plaintiff submitted the Matthews Declaration and Defendant submitted the declaration of Dr. Rossi. Dkt Nos. 41-2, 51.

Approximately one month before the August 11, 2023, deadline, Defendant contacted Plaintiff stating that "we plan to move for summary judgment and we will argue that the case can

be decided on the present record and without the need for further discovery (including expert depositions)." Dkt. No. 74-2 at 2.  In addition, Defendant stated that it intended to "write to the Court very shortly to ask for an indefinite adjournment of the expert discovery deadline until after the motions for class certification and summary judgment have been decided, on the grounds that the granting of either motion could obviate the need for (or at least materially affect) depositions of the experts, Drs. Matthews and Rossi." *Id.*  Defendant asked whether Plaintiff would oppose or consent to that request, and Plaintiff stated that he consented to Defendant's filing of a letter with the Court to that end.  *Id.* at 2–3.

Defendant wrote to the Court stating that Drs. Matthews' and Rossi's reports "frame the various issues raised in this action," and that under the Court's Revised Case Management Plan and Scheduling Order, the parties had to take Drs. Matthews' and Rossi's depositions by August 11, 2023.  Dkt. No. 52 at 1.  Defendant requested that the Court adjourn the expert discovery deadline during the pendency of Defendant's motion for summary judgment because "the issues on summary judgment may be determined based on the current record, including the already submitted expert reports."  *Id.* at 2.

The Court granted the parties' request to postpone the expert discovery deadline.  Dkt. No. 53.  The Court's granting of the parties' request is properly construed as having adjourned the expert discovery deadline only with respect to the taking of Drs. Matthews' and Rossi's depositions, and not extending the time to disclose additional experts.  Dkt. No. 75 at 3–4.

Notwithstanding the parties' August 11, 2023, deadline to disclose their experts, Plaintiff did not disclose Meyers until two months after the deadline, on October 11, 2023, *see* Dkt Nos. 52–53, and only after Defendant had moved for summary judgment.  *See* Dkt. No. 75 at 3–4. This is a clear violation of Rule 26.

Plaintiff argues that the Court should deny Defendant's motion to strike the Meyers Declaration as untimely for two primary reasons.  First, Plaintiff argues that Defendant's motion is procedurally improper because Defendant failed to comply with Local Civil Rule 37.2 by requesting an informal conference with the Court before filing its motion to strike.  Second, Plaintiff argues that its late filing was justified because the Meyers Declaration served as a rebuttal to the Declaration of Clayton Santos that Defendant filed in connection with its motion for summary judgment.  Dkt. No. 80 at 1–2.[4]

### A.  Defendant's Failure to Request an Informal Conference Does Not Preclude the Court from Reaching the Merits of Defendant's Motion

As a threshold matter, although Plaintiff contends that Defendant's motion to strike the Meyers Declaration should be denied because Defendant did not comply with Local Civil Rule 37.2, that rule does not prevent the Court from reaching the merits of Defendant's motion.  Local Civil Rule 37.2 provides that generally, "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court."  L.R. 37.2.  A failure to request an informal conference, however, does not bar the Court from entertaining Defendant's motion to strike. *Shim-Larkin v. City of New York*, 2017 WL 2304441, at *4 (S.D.N.Y. May 18, 2017) (excusing plaintiff's failure to comply with Local Civil Rule 37.2's letter-motion requirement), *objections overruled*, 2017 WL 4862790 (S.D.N.Y. Oct. 25, 2017) (Nathan, J.); *Harley v. Nesby*, 2011 WL 6188718, at *8 (S.D.N.Y. Dec. 12, 2011) ("[T]he failure to hold a Local Civil Rule 37.2 conference 'does not warrant a denial or delay in deciding the merits [of a motion for sanctions]

---

[4] Plaintiff does not dispute that the Court adjourned the expert discovery deadline only with respect to Drs. Matthews and Rossi.  *See generally* Dkt. No. 80.  With respect to other expert disclosure, the deadline remained August 11, 2023.  It is undisputed that Plaintiff filed the Matthews Declaration after the August 11, 2023, deadline.

at this stage.'" (quoting *Trilecriant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 367 (S.D.N.Y.2010)));

*Time Inc. v. Simpson*, 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002) (stating that Local

Civil Rule 37.2 is designed "to promote efficiency in litigation, and that goal would not be

advanced by further delay in resolving these issues on the merits").  Here, Local Civil Rule

37.2's goal of promoting efficiency in litigation is advanced by excusing Defendant's

noncompliance with the rule, and resolving the merits of Defendant's motion.  The parties have

fully briefed their motions for class certification, summary judgment, and two different motions

to strike.  An informal conference would only delay resolving Defendant's motion to strike the

Meyers Declaration, and the remaining motions before the Court.[5]

## B.      Preclusion Is Warranted

Turning to the merits of Defendant's motion, the Court concludes that precluding

Plaintiff from relying on the Meyers Declaration is warranted.  In determining whether to

preclude evidence, courts look to four factors: "(1) the party's explanation for the failure to

---

[5] Plaintiff also argues that the Court should not entertain Defendant's motion because Defendant
was required to meet and confer with Plaintiff in advance of submitting a letter-motion to the
Court seeking an informal conference.  Dkt. No. 80 at 1.  Defendant argues that the meet-and-
confer requirement does not apply here.  Dkt. No. 81 at 1–2.  Notably, some courts have stated
that when a party is seeking to preclude the use of an expert report pursuant to Rule 37(c), rather
than compel the production of an expert report pursuant to Rule 37(a)(1), no meet-and-confer
requirement applies.  *See Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, 2019 WL
5694256, at *5 (E.D.N.Y. July 22, 2019), *report and recommendation adopted*, 2020 WL
1242616 (E.D.N.Y. Mar. 16, 2020) ("Defendants are seeking to preclude, rather than compel, the
expert disclosures pursuant to Fed. R. Civ. P. 37(c)(1). Unlike Rule 37(a)(1), Rule 37(c)(1)
contains no meet and confer requirement.").  However, the Court need not address Defendant's
argument because Defendant's failure to meet and confer with Plaintiff does not prevent the
Court from reaching the merits of Defendant's motion.  *Gibbons v. Smith*, 2010 WL 582354, at
*2 (S.D.N.Y. Feb. 11, 2010) ("[T]he meet-and-confer requirement is not a prerequisite to
addressing the merits of a discovery motion and [] it may be excused where the meet-and-confer
would be futile.").

comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.1988)); *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). Each factor is addressed in turn, and each supports striking the Meyers Declaration.

The first *Softel* factor weighs in favor of striking the Meyers Declaration. Plaintiff contends that he was justified in failing to comply with the expert disclosure deadline because the Meyers Declaration served as a rebuttal to the Santos Declaration, which Defendant filed alongside its motion for summary judgment. Dkt. No. 80 at 1. Plaintiff contends that Santos offers expert opinion "under the guise of being a 'non-retained expert' and employee." *Id.* However, Santos serves as Beliv's Head of Research and Development. Dkt. No. 61 ¶ 1. Santos is not an expert witness, but is instead a fact witness testifying from personal knowledge about the Product, and he was properly designated as such by the Defendant in its initial disclosures pursuant to Rule 26(a)(1)(A)(i). *See* Dkt. No. 50-4 at 1–2 (designating Santos as an individual with knowledge of discoverable evidence pertaining to "Formulation, ingredients, labeling, regulatory, stability/shelf life, and manufacturing processes").[6] Plaintiff's argument to the contrary is unavailing. Therefore, his purported justification for his late filing is unpersuasive.

In addition, Plaintiff's failure to timely disclose Meyers is particularly problematic here because another court in this District rejected a similar attempt by Plaintiff's counsel to rely on a late-filed expert declaration just over one year ago. *See Colpitts v. Blue Diamond Growers*, CM-

---

[6] Thus, Plaintiff could have taken Santos' deposition. Plaintiff apparently chose not to do so. Dkt. No. 75 at 11 n.4.

ECF No. 20-cv-2487, Dkt. No. 104 ("*Colpitts* Tr."). In *Colpitts*, like here, Plaintiff's counsel sought to rely on an expert declaration that was filed after the expert disclosure deadline, and only after the defendant had already moved for summary judgment. *See id*. There, the court precluded Plaintiff's counsel from relying on the late-filed declaration because his late filing was "neither substantially justified or harmless under Rule 37, and because the four *Softel* factors all weigh[ed] in favor of striking [the] declaration pursuant to Rule 37(c)(1)." *Id.* at 19:23–20:3.

With that background knowledge fresh in mind, and with approximately six months until the disclosure deadline in this case from the date of the *Colpitts* court's decision striking his late-filed expert declaration, Plaintiff's counsel had plenty of time to disclose Meyers to Defendant. Defendant even reminded Plaintiff of the August 11, 2023, expert disclosure deadline in an email a month before the deadline. Dkt. No. 74-2 at 2. Although Plaintiff was capable of engaging Meyers before the expert disclosure deadline, and subsequently disclosing Meyers to Defendant before that deadline, Plaintiff did not do so. It was not a secret that the preservative qualities and functions of citric and ascorbic acid would be an issue for summary judgment and for trial. There is no justification for Plaintiff's failure to timely disclose. *Frydman v. Verschleiser*, 2017 WL 1155919, at *3 (S.D.N.Y. Mar. 27, 2017) (stating that "plaintiffs were perfectly capable of engaging their experts long before [the expert disclosure deadline], and of making their expert disclosures by that deadline").

Next, the second *Softel* factor also weighs in favor of striking the Meyers Declaration. A party's late filing of an expert report that is critical to a party's case "only serves to underscore the inexcusable quality of its delayed submission." *Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 20, 2004); *Colpitts* Tr. at 16:21–17:2 ("expert testimony relevant to central aspects of a plaintiff's case . . . is so obviously important to this

litigation that there could be no excuse for the failure to expeditiously develop that evidence, and of course, to also then disclose it in compliance with Rule 26"); *Frydman*, 2017 WL 1155919, at *3 (noting that it was "incredible that the plaintiffs would wait until nine days before the final discovery cut-off date to submit the two reports [of] two experts [that] were so critical to their case"). Plaintiff concedes in his memorandum of law in opposition to Defendant's motion for summary judgment that the question of whether the citric and ascorbic acids function as preservatives in the Product is one of the FAC's "central allegations." Dkt. No. 69 at 4. Plaintiff's failure to develop evidence to substantiate his claims, and then properly disclose that evidence in advance of the expert disclosure deadline, is inexcusable.

Taken together, the third and fourth *Softel* factors weigh in favor of striking the Meyers Declaration. If the Court did not strike the Meyers Declaration, and if discovery was reopened, Defendant would suffer significant prejudice because Defendant would likely have to designate a rebuttal witness, develop rebuttal evidence, defend and take depositions, and then engage in additional motion practice, all at considerable expense. Summary judgment briefing would essentially have to be redone. *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y.), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014) ("Absent preclusion, discovery will need to be re-opened in order to provide Defendants with an opportunity to explore [an expert's] new "revelations" that were not previously advanced, 'rendering [Defendants' summary judgment] motion, addressed in good faith to the theories and evidence that had been disclosed, an expensive waste of effort.'" (alterations adopted) (quoting *Every v. Makita U.S.A., Inc.,* 2005 WL 2757952, at *6 (S.D.N.Y. Oct. 24, 2005) (Lynch, J.))); *Colpitts* Tr. at 17:23–18:7 ("[T]he parties would be required to redo their summary judgment briefing entirely, a considerable expenditure of time and money, were I to permit the plaintiff to

introduce the [expert] declaration at this stage . . . And, again, reopening expert discovery would, on its own, entail considerable prejudice since the defendant would likely depose [the expert] and then retain its own rebuttal expert.").  Moreover, notwithstanding the availability of a continuance, a continuance is not appropriate here because discovery is closed.  *See Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010).  A continuance is also inappropriate because it would only encourage Plaintiff's counsel to continue to attempt to utilize the same tactic—filing expert declarations after the deadline to do so has passed—in future cases before this Court and others.  *Cf. Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009) ("Granting a continuance to permit plaintiffs' behavior would serve no purpose except to encourage parties to disregard the Court's scheduling order.").

Accordingly, because Plaintiff's failure to timely disclose the Meyers Declaration was neither substantially justified nor harmless, and each *Softel* factor weighs in favor of striking the Meyers Declaration, the Court grants Defendant's motion to strike the Meyers Declaration as untimely.[7]

---

[7] Plaintiff also claims, in essence, that he may rely on the Meyers Declaration to oppose Defendant's motion for summary judgment, even if the Court exercises its discretion to strike the declaration pursuant to Rule 37.  Dkt. No. 80 at 2.  However, that claim is baseless.  The plain language of Rule 37 suggests that a party cannot rely on evidence that is stricken to support its opposition to a motion.  *See* Fed. R. Civ. P. 37 ("[T]he party is not allowed to use that information or witness to supply evidence on a motion"); *Advanced Analytics*, 301 F.R.D. at 38, 42 (precluding plaintiff from relying on a late-filed expert declaration to oppose defendant's motion for summary judgment (collecting cases)); *Morritt*, 2011 WL 3876960, at *8 (granting defendants' motion for summary judgment after precluding an expert's report because without the report, plaintiffs were "unable to make out a prima facie case in strict products liability for design defects").

## II.      Beliv's Motion for Summary Judgment

NYGBL §§ 349 and 350 prohibit "[d]eceptive acts or practices" and "[f]alse advertising"

in "the conduct of any business, trade, or commerce."  N.Y. Gen. Bus. Law §§ 349, 350.  "To

successfully assert a claim under either section, 'a plaintiff must allege that a defendant has

engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice.'"  *Orlander v. Staples, Inc.*,

802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d

675, 675 (N.Y. 2012)); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1

(N.Y. 2002) ("The standard for recovery under [NYGBL] § 350, while specific to false

advertising, is otherwise identical to section 349.").  Defendant contends that summary judgment

is warranted, among other reasons, because Plaintiff cannot prove the third element of his

NYGBL §§ 349 and 350 claims—that he suffered an injury as a result of Defendant's alleged

mislabeling of the Product.[8]  *See* Dkt No. 63 at 10–12; Dkt. No. 77 at 8–9.

In order to recover under NYGBL §§ 349 and 350, "a plaintiff must prove 'actual'

injury . . . , though not necessarily pecuniary harm."  *Stutman v. Chem. Bank*, 731 N.E.2d 608,

612 (N.Y. 2000).  "A plaintiff suffers actual injury if, 'on account of a materially misleading

practice, she purchased a product and did not receive the full value of her purchase.'"  *Colpitts v.*

---

[8] Defendant also argues that Plaintiff has not produced evidence sufficient to support his claim
that the challenged representation misleads consumers in a material way.  Dkt. No. 63 at 8–10.
Under NYGBL §§ 349 and 350, "a deceptive act is defined as one 'likely to mislead a reasonable
consumer acting reasonably under the circumstances.'"  *In re KIND LLC "Healthy & All
Natural" Litig.*, 627 F. Supp. 3d 269, 280 (S.D.N.Y. 2022) (quoting *Maurizio v. Goldsmith*, 230
F.3d 518, 521–22 (2d Cir. 2000)); *de Lacour v. Colgate-Palmolive Co.*, 2024 WL 36820, at *4
(S.D.N.Y. Jan. 3, 2024) ("To survive summary judgment, Plaintiffs must 'introduce evidence
that could support a finding that reasonable consumers believe' the plaintiffs' proffered theory of
deception.'" (quoting *In re KIND*, 627 F. Supp. 3d at 282)).  The Court does not address whether
the representations at issue are likely to mislead a reasonable consumer because the Court grants
summary judgment in favor of Defendant on the basis that Plaintiff has failed to produce
evidence to raise a triable issue of fact as to whether he suffered an injury.

*Blue Diamond Growers*, 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023) (quoting *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020)).  A plaintiff may demonstrate that she did not receive the full value of her purchase by showing that (1) she paid a higher price for a product than she otherwise would have paid because defendant's deceptive conduct artificially inflated the market price—*i.e.*, that she paid a "price premium"; and/or (2) "she was exposed to a material deceptive act and relied on that misrepresented fact to her detriment." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 453 (S.D.N.Y. 2023); *Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (summary order) ("One method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have."); *see also Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *4–5 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018) (explaining that injuries caused by deceptive practices may be alleged "in one of two ways: by alleging that (1) a plaintiff overpaid or paid a 'price premium' . . . ; or (2) plaintiff did not receive the product she bargained for").  Plaintiff alleges that he was injured under both theories, but the record does not contain any support for his claimed injuries.

First, Plaintiff has not offered any evidence to support his allegation that the Product commanded a price premium relative to comparable products that did not include the alleged false and misleading labeling.  Dkt. No. 8 ¶ 31 ("The Product is sold for a price premium compared to other similar products, no less than approximately $1.59 per 11.2 oz, a higher price than it would otherwise be sold for, absent the misleading representations and omissions."); *id*. ¶¶ 66–67 ("The product was worth less than what Plaintiff paid and he would not have paid as

much absent Defendant's false and misleading statements and omissions."); *see also id.* ¶ 82. Plaintiff contends that his expert, Dr. Matthews, has proposed a framework through which Plaintiff can identify a price premium.  Dkt. No. 69 at 7.  It is true that Plaintiff's expert has proposed using conjoint and hedonic analyses "to measure the amount that consumers would be willing to pay for mango nectar juice drinks that they believed contained preserving ingredients compared to similar drinks that did not contain preserving ingredients."  Dkt. No. 41-2 ¶ 193. However, Dr. Matthews has not conducted either analysis to date, Dkt No. 63 at 6, and a proposal to identify evidence at some yet-to-be-determined date is not sufficient to survive summary judgment when Plaintiff is required to come forward with admissible evidence to raise a genuine issue of fact for trial.[9]  *See Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) ("[A] party 'cannot overcome summary judgment by relying on mere speculation or conjecture as to the true nature of the facts because conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" (quoting *Miller v. City of New York*, 700 Fed. App'x 57, 58 (2d Cir. 2017) (summary order))).

Nor has Plaintiff produced any other evidence that could establish that he paid a premium for the Product.  This evidence could have included, for example, the prices of competing products without the "No Preservatives" representation, but that data is not present here.  *See Ebin v. Kangadis Food Inc.*, 2014 WL 737878, at *2 (S.D.N.Y. Feb. 25, 2014) (holding that

---

[9] Defendant seeks to strike the Matthews Declaration in its entirety.  Dkt. No. 64.  The Court does not need to decide whether any portion of the Matthews Declaration is admissible.  Even if Dr. Matthews' entire declaration was admitted in its present form, it would not lend support to Plaintiff's claim that he paid a price premium for the Product because Dr. Matthews has not conducted her proposed conjoint and hedonic analyses to date and has not opined that the Product actually commanded a price premium.

plaintiffs had produced sufficient evidence to survive summary judgment because plaintiffs had offered an expert's report that contained estimates of the average price of the product with the alleged misrepresentation at issue and raw data relating to the price of competing products for comparison).

Plaintiff's deposition testimony contradicts, moreover, his claim that he paid a price premium for the Product. Plaintiff testified repeatedly that he purchased the Product because he thought it was *cheaper* than comparable alternatives. *See* Dkt. No. 60-2. When asked, for example, whether he thought the Product was cheaper than products that did not have the "No Preservatives" claim at issue, Plaintiff responded: "yes," the Product was cheaper. *Id.* at 60:07–21. Similarly, when asked whether he "pa[id] more for [the Product] than [he] did for a comparable product," Plaintiff responded: "No. Less." *Id.* at 80:20–22. Finally, when asked about how the Product's price compared to the price of orange juice that he purchased at Whole Foods and/or Trader Joe's, and the prices of lemonade and other fruit drinks that Plaintiff purchased at Whole Foods, Plaintiff stated unequivocally that the Product was cheaper than the other drinks he purchased on a per-ounce basis.[10] *Id.* at 133:10–135:11.

Second, Plaintiff alleges that he was injured because he would not have bought the product but for Defendant's false and misleading labeling, and that he relied on the alleged misrepresentation to his detriment. *See* Dkt. No. 8 ¶¶ 30, 65, 82; *see also* Dkt. No. 60-2 at 127:16-19 ("I bought the product to [sic] the fact that it said it was—I'm sorry, no preservatives,

---

[10] Plaintiff ironically argues that his own deposition testimony is inadmissible because it embraces an ultimate issue. Dkt. No. 69 at 5–6. Plaintiff misses the point. Plaintiff's testimony demonstrates that there is no alternative basis on which a reasonable jury could show find that he has suffered an injury. Even if Plaintiff could rely on expert evidence of a price premium in the face of his testimony, the fact remains that the record is devoid of any evidence that the Product commanded a price premium as a result of the claimed misrepresentation.

otherwise I wouldn't have bought the product."); *id.* at 128:22-24 ("If it was labeled misleadingly, I was injured by buying a product that I would not have bought in the first place."). To establish injury on an actual reliance/benefit of the bargain basis, the plaintiff must also show that she "did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)). "[M]erely purchasing a mislabeled product is not an injury . . . absent further proof that the purchase in some way injured the plaintiff." *See Colpitts*, 2023 WL 2752161, at *4 n.3 (citing *Small v. Lorillard Tobacco Co. Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999)).

Here, Plaintiff proffers no evidence that the Product he received was anything less than what he contends is the product he was promised.  Plaintiff's claim rests upon the proposition that he "bought the Product because he expected it did not contain preservatives because that is what the front label said."  Dkt. No. 8 ¶ 62.  He alleged that, contrary to the label that stated that the Product contained No Preservatives, the Product contained ascorbic acid which is "used in foods as a preservative," *id.* ¶ 12, and that it and citric acid are preservatives, *id.* ¶ 21.  However, Defendant has offered evidence at summary judgment that neither one of the ingredients was used as a preservative in the Product.  Dkt. No. 61 ¶ 12.  The Product did not need preservatives because the pasteurization process it underwent permitted it to be stored at ambient temperatures without the need to add preservatives to extend its shelf life or otherwise preserve it.  *Id.* ¶¶ 9-11.  Citric acid was used as an acidulant to increase palatability or taste and ascorbic acid was used as a nutrient.  *Id.* ¶ 12.  Plaintiff adduced no evidence during discovery and presents no evidence at summary judgment otherwise.  Plaintiff presented himself for a deposition, but that deposition testimony contradicted the allegations in his FAC.  Plaintiff testified repeatedly that he did not view the citric and ascorbic acids as preservatives.  When asked, for example, whether

he thought that there were any preservatives in the Product, Plaintiff stated: "Ingredients are: [w]ater, mango pulp concentrate, sugar, citric acid, [c]ellulose gum (as stabilizer), [v]itamin C, and mango flavor.  To me, nothing there is a preservative, in my opinion, but I'm probably wrong."  Dkt. 60-2 at 57:10–58:17, 59:5–59:19.

Therefore, Plaintiff fails to present a triable fact that he relied to his detriment on the Product's "No Preservatives" claim in purchasing the Product, and that he suffered injury because the Product contained preservatives—a product that was of lesser value to him.  *See Rodriguez*, 2018 WL 2078116, at *4–5 (concluding that plaintiffs adequately alleged that they were injured because "they did not receive the . . . product that defendant led them to believe they were buying," thereby purchasing a product with "considerably less value than was warranted" (internal quotation marks omitted)); *Lazaroff v. Paraco Gas Corp.*, 2011 WL 9962089, at *6 (Sup. Ct. Kings Cnty. Feb. 25, 2011) ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain . . . Thus, plaintiff has properly alleged an injury.")  Plaintiff here received exactly what he understood he would receive—a nectar beverage with no ingredients that functioned as preservatives.

Because Plaintiff has failed to offer any evidence to support his claim that he suffered an injury, which is a necessary element of his only remaining NYGBL claims, no reasonable jury could return a verdict in Plaintiff's favor.  Therefore, Defendant's motion for summary judgment is granted.[11]  *See Colpitts*, 2023 WL 2752161, at *4–5 (granting defendant's motion for summary

---

[11] Plaintiff appears to claim that summary judgment should be denied because Plaintiff can obtain statutory damages under NYGBL §§ 349 and 350.  Dkt. No. 69 at 7.  However, "the question of remedies is distinct from the question of liability," *Colpitts*, 2023 WL 2752161, at

judgment because plaintiff had not produced any evidence to substantiate his allegation that he paid a price premium for almonds that obtained their smoky flavor from seasoning, rather than from actual smoke); *Segovia*, 2017 WL 6398747, at \*4–5 (S.D.N.Y. Dec. 12, 2017) (granting defendant's motion for summary judgment because the "record [was] utterly devoid of factual support for [p]laintiff's proposition" that he paid a price premium for defendant's dietary supplements that were allegedly mislabeled); *Weiner v. Snapple Beverage Corp.*, 2011 WL 196930, at \*3–5 (S.D.N.Y. Jan. 21, 2011) (granting defendant's motion for summary judgment because plaintiffs failed to proffer sufficient evidence to demonstrate that they paid a price premium for defendant's teas and juice drinks that it represented as "All Natural" despite the fact that the beverages included high fructose corn syrup).

## III.   Remaining Motions

Plaintiff's motion for class certification is denied as moot because Defendant's motion for summary judgment with respect to Plaintiff's only remaining claims for violations of NYGBL §§ 349 and 350 is granted.  *See Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at \*27 (N.D.N.Y. Mar. 31, 2022), *aff'd sub nom. Paradowski v. Champion Petfoods USA, Inc.*, 2023 WL 3829559 (2d Cir. June 6, 2023) (denying plaintiff's motion for class certification as moot after granting defendants' motion for summary judgment).  Defendant's remaining motion to strike the Matthews Declaration is denied as moot.

---

\*3, and Sections 349 and 350 both require that a plaintiff establish that he suffered an injury before he can obtain damages, statutory or actual.  *See id.*; *see also Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at \*20 n.32 (E.D.N.Y. July 18, 2013); *Pagan v. Abbot Lab'ys, Inc.*, 287 F.R.D. 139, 149 (E.D.N.Y. 2012); N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater[.]"); N.Y. Gen. Bus. Law § 350-e ("Any person who has been injured by reason of any violation of section three hundred fifty . . . [may bring] an action to recover his or her actual damages or five hundred dollars[.]").  Plaintiff's argument regarding the availability of statutory damages is without merit because he has not proffered any evidence to support his claimed injury.

**CONCLUSION**

Defendant's motions for summary judgment and to strike the Meyers Declaration are GRANTED.  Plaintiff's motion for class certification, and Defendant's motion to strike the Matthews Declaration, are DENIED AS MOOT.

The Clerk of Court is respectfully directed to close Dkt. Nos. 40, 59, 64, and 73.


SO ORDERED.

Dated: March 12, 2024
       New York, New York                          _____
                                                        LEWIS J. LIMAN
                                                     United States District Judge